UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL PAUL MORRIS,<br>CDCR # F-65115,<br><br>         Plaintiff,<br><br>v.<br><br>M. BLADE; C/O LEON; J. RUIZ; and<br>CENTINELA STATE PRISON,<br><br>         Defendants. | Case No.: 21-CV-235 JLS (KSC)<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*; AND (2) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)**<br><br>(ECF Nos. 1, 2) |

   On February 5, 2021, Plaintiff Samuel Paul Morris ("Plaintiff" or "Morris"), currently incarcerated at Centinela State Prison ("CSP") and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* ECF No. 1 ("Compl."). Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a); instead, he filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 2 ("IFP Mot.").

/ / /

1

## MOTION TO PROCEED *IN FORMA PAUPERIS*

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1), 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See id.* § 1915(b)(2); *Bruce*, 577 U.S. at 85.

In support of his IFP Motion, Morris has submitted a Prison Certificate signed by a CSP Accounting Officer attesting as to his monthly balances and deposits and an Inmate

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

Trust Account report. *See* ECF No. 3; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. The certificate shows Morris had an average monthly deposit of $16.67 to his account, maintained an average balance of $16.67 in his account over the six-month period preceding the filing of his current Complaint, and had an available balance of $0.00 as of February 9, 2021. *See* ECF No. 3 at 1; 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 577 U.S. at 85; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court **GRANTS** Morris's IFP Motion (ECF No. 2) and declines to exact any initial filing fee because his trust account statement shows he now "has no means to pay it." *Bruce*, 577 U.S. 84–85. The Court directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id*.

**SCREENING PER 28 U.S.C. §§ 1915(E)(2)(B) AND 1915A(B)**

**I.   Legal Standards**

   *A.   28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)*

Because Morris is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous
///

3

21-CV-235 JLS (KSC)

or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

### B. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive

4

rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## II. Plaintiff's Allegations

Morris alleges that, on the morning of November 5, 2019, his housing unit, Building #5, was searched by institutional staff. Compl. at 3. This required the inmates housed there to be placed in the yard. *Id.* Morris claims he normally received his medication in the morning and asked to be let out of the yard to receive it. *Id.* According to Morris, the correctional officers he spoke to told him to wait and that medical staff would call for him when they were ready. *Id.*

Sometime in the afternoon, Morris claims a correctional officer walked through the yard and Morris told him about the situation with his medication. *Id.* at 4. The correctional officer allegedly told Morris that he would accompany Morris to the medical area where medication was given. *Id.* Morris claims he was told to go to the medication window and when he got there, Defendant Blade, the nurse on duty, asked him why he did not come to get his medication earlier in the day. *Id.* Morris states that he told Blade the reason for his inability to come for his medication in the morning. *Id.* According to Morris, Blade told him it was too late for him to receive his medication, and when Morris explained it was not his fault, Blade told him he "didn't give a fuck," that he "wasn't going to give me shit," and to "get the fuck off the window." *Id.* Morris claims he said "fuck you" to Blade, told him he was going to "get at [his] boss," and told a nearby correctional officer he was being refused his medication and wanted to speak to Blade's supervisor. *Id.* at 5.

At that point, according to Morris, "Blade stepped out of the medical building, walked towards where we were and said 'What the fuck did you say,' and pushed [him] very hard." *Id.* Morris alleges the push "caused [his] head to snap forward & back" and

caused him to "stumble backwards 3 to 5 steps." *Id.* Morris was handcuffed, strip searched, and put in a cage which he describes as "cramped" and "hot." *Id.* at 6. As a result of the pain he was experiencing, he vomited and was later taken to be seen by medical personnel. *Id.* at 6. He claims he suffered from severe neck pain as a result of Blade's actions. *Id.* at 6.

Morris blames Defendant Leon for not securing the area where Blade was working, which enabled Blade to walk out of the medical dispensary area and assault him. *Id.* at 8. Morris also claims Defendant Ruiz violated Morris's due process rights when he denied Morris the ability to call officer witnesses at his disciplinary hearing. *Id.* at 9. He further claims that Ruiz's actions "were . . . an effort to cover up mistakes made by C.O.s and staff." *Id.* Morris seeks monetary damages and injunctive relief. *Id.* at 12.

## III. Analysis

Morris alleges Blade violated his Eighth Amendment rights by (1) using excessive force when he pushed Morris and (2) denying him medical care when Blade refused to give Morris his medication. Compl. at 3–7. He claims Leon failed to protect him from Blade, a violation of his Eighth Amendment rights, when he did not secure the door to the medication dispensary area, which allowed Blade to exit that area and assault Morris. *Id.* at 8. Morris alleges Ruiz violated his due process rights when Ruiz denied Morris the ability to call witnesses at his disciplinary hearing. *Id.* at 9. Finally, Morris alleges that CSP violated his Eighth Amendment rights to be free from cruel and unusual punishment and to be provided medical care as well as his due process rights by conducting a search without providing a system for inmates to receive their medications. *Id.* at 10.

### A. Defendant Blade

As noted *supra*, Morris alleges Blade violated Morris's Eighth Amendment rights by using excessive force when he pushed him and by denying him medical care when he refused to give him his medication. *Id.* at 3–7. Where excessive force is alleged, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S.

1, 7 (1992). However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 10 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). In order to violate the Eighth Amendment, the Defendant must use force which is "unnecessary" and "wanton." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In determining whether a defendant has used excessive force in the prison context, the Court considers the following factors: (1) the need for application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; (4) the threat "reasonably perceived by the responsible officials"; and (5) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. Thus, a constitutional violation can only be established if force was used "maliciously and sadistically for the purpose of causing harm." *Id*. at 319; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (claims that an official has inflicted cruel and unusual punishment contain both an objective component as well as a subjective "inquiry into the prison official's state of mind").

Morris alleges that, after arguing with Blade, Blade "stepped out of the medical building, walked toward where we were and . . . pushed me very hard," putting his whole body weight of 350 pounds behind the shove. Compl. at 5. This caused Morris's head to "snap back and forth," causing pain that was so intense he vomited. *Id.* at 5–6. Given Morris's allegations, there was no "need for application of force" by Blade because a correctional officer was sufficiently close by that he was able to handcuff Morris immediately after the push. *Id.* at 5; *Hudson*, 503 U.S. at 7. Morris's allegation that his "head snap[ped] forward and backwards," which caused "intense pain" that caused him to vomit is, at a minimum, a moderate injury which was inflicted without a significant need

7

for force or presence of a threat. Compl. at 5–6; *Hudson*, 503 U.S. at 7. Although Morris was found guilty at a disciplinary hearing of "behavior which could lead to violence" because Blade claimed Morris had "entered into his personal space" and he feared for his safety, exhibits attached to Morris's Complaint indicate Blade was the aggressor. *See* Compl. at 17, 30–31, 34, 40–42, 45, 53. Accordingly, the Court finds that Morris's Complaint contains a plausible Eighth Amendment excessive force claim against Blade sufficient to survive the "low threshold" set to withstand the *sua sponte* screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

The Eighth Amendment also requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and it is well established that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A determination of 'deliberate indifference' involves an examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting *Estelle*, 429 U.S. at 104). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

///

8

21-CV-235 JLS (KSC)

The failure to give medication to an inmate can rise to the level of deliberate indifference under certain circumstances—for example, where the medication is prescribed to treat a life-threatening condition. *Johnson v. Schwarzenegger*, 366 F. App'x 767, 770 (9th Cir. 2010); *see also Lozano v. Cty. of Santa Clara*, 2019 WL 6841215, at 14 (N.D. Cal. Dec. 16, 2019). Morris alleges the medication Blade refused to give him was for Hepatitis C, hypothyroidism, and a severe skin infection. Compl. at 5. The Centers for Disease Control ("CDC") states that chronic Hepatitis C "can result in serious, even life-threatening health problems like cirrhosis and liver cancer" if not treated. *See* https://www.cdc.gov/hepatitis/hcv/index.htm (last visited June 10, 2021).[2] Johns Hopkins Medicine notes that heart failure is one side effect of the failure to treat hypothyroidism. *See* https://www.hopkinsmedicine.org/health/conditions-and-diseases/hypothyroidism (last visited June 10, 2021). Accordingly, like Morris's Eighth Amendment excessive force claim, the Court finds that Morris's Complaint contains a plausible Eighth Amendment medical care claim against Blade sufficient to survive the "low threshold" set to withstand the *sua sponte* screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

### B.     Defendant Leon

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrs. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To allege an Eighth Amendment violation, a prisoner must show that a prison official acted with deliberate indifference. *See id.* (citing *Farmer*, 511 U.S. at 837). "'Deliberate indifference' has both subjective and objective components. A prison official must 'be aware of facts from which the inference could be drawn that a substantial risk of

---

[2] "The Court may take judicial notice of medical dictionary definitions." *Jones v. Neuschmid*, No. 18-01738 EJD (PR), 2021 WL 1056597, at *15 (N.D. Cal. March 18, 2021 (citations omitted).

serious harm exists, and . . . must also draw the inference.'" *See id*. (quoting *Farmer*, 511 U.S. at 837) (internal citations omitted).

Morris claims Leon failed to protect him from Blade's assault by failing to ensure that the door to the medication dispensary area was locked. Compl. at 8. Morris has not alleged plausibly, however, that Leon knew that the door was unlocked, as Morris notes that Leon stated in the Crime/Incident Report that "[i]t is *possible* the clinic door may have been unlocked when LVN Blade step[ped] out [because inmates] had just been escorted into the clinic prior to LVN Blade stepp[ing] out." Compl. at 57; *Labatad*, 714 F.3d at 1160. Morris also has not alleged plausibly that (1) Leon could draw the inference that an unlocked door created "a substantial risk of serious harm" to Morris or (2) Leon actually drew such an inference. *Labatad*, 714 F.3d at 1160. Accordingly, Morris has failed to state a plausible section 1983 claim against Leon. *Iqbal*, 556 U.S. at 678

### C. *Defendant Ruiz*

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id*. These procedural protections, however, "adhere only when the disciplinary action

10

21-CV-235 JLS (KSC)

implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id*. (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must a court consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Morris's due process claim requires *sua sponte* dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) because he fails to allege facts sufficient to show plausibly that the deprivations he suffered as a result of his disciplinary conviction, *i.e.*, a loss of 30 days of good time credit and 30 days of phone privileges, *see* Compl. at 19, imposed the type of "atypical and significant hardships" required by *Sandin* to invoke liberty interests entitled to *Wolff*'s procedural safeguards. *Sandin*, 515 U.S. at 484; *see e.g., Salinas v. Montgomery*, No. 3:19-cv-0744-AJB-RBB, 2019 WL 2191349, at *5 (S.D. Cal. May 21, 2019) (finding allegations that inmate was "assessed a good-time credit loss of 90 days" insufficient to show atypical and significant hardship); *Randle v. Melendrez*, No. CV 16-2342 MWF (AJW), 2017 WL 1197864, at *4 (C.D. Cal. Feb. 17, 2017) (finding "four months in administrative segregation as a result of the false RVR," during which

11

plaintiff was deprived of contact visits, "packages, canteen, unrestricted yard, phone calls and personal property," insufficient to implicate a protected liberty interest under *Sandin*), *report and recommendation adopted*, 2017 WL 1199719 (C.D. Cal. 2017).

### D.  *Defendant Centinela State Prison*

Finally, Morris alleges that CSP violated his Eighth and Fourteenth Amendment rights by conducting a search of prisoners without creating a mechanism for prisoners to receive their medication while the search was underway. Compl. at 10. "Persons" under section 1983 are state and local officials sued in their individual capacities, private individuals and entities that act under color of state law, and/or the local governmental entity itself. *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 995–96 (N.D. Cal. 1996). CSP is not a "person" subject to suit under section 1983, and it is entitled to immunity from suit for monetary damages under the Eleventh Amendment. *Id.*; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53-54 (1996); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) (citing *Hale v. Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (holding that a state department of corrections is an arm of the state, and thus, not a "person" within the meaning of § 1983)); *see also Dragasits v. California*, No. 3:16-cv-01998-BEN-JLB, 2016 WL 680947, at *3 (S.D. Cal. Nov. 15, 2016) ("The State of California's Department of Corrections and Rehabilitation and any state prison, correctional agency, sub-division, or department under its jurisdiction, are not 'persons' subject to suit under § 1983) (citing *Groten*, 251 F.3d at 851). Therefore, to the extent Plaintiff seeks monetary damages against CSP, his claim require dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### E.  *Leave to Amend*

Because the Court has determined that only Morris's Eighth Amendment claims against Blade survive the *sua sponte* screening process, it will grant Morris the opportunity to either: (1) notify the Court of his intent to proceed with his Eighth Amendment claims against Blade only, or (2) file an amended complaint that corrects all the deficiencies of pleading identified *supra*. Morris must choose one of these options <u>within sixty (60) days</u>

12

21-CV-235 JLS (KSC)

of the date on which this Order is electronically docketed. If Morris notifies the Court that he wishes to proceed with only his Eighth Amendment claims against Blade, the Court will issue an Order directing the U.S. Marshals to effect service of Morris' Complaint on Blade and dismissing all other claims originally included in that pleading.

## CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** Plaintiff's Motion to Proceed *in Forma Pauperis* pursuant to 28 U.S.C. § 1915(a) (ECF No. 2);

(2) **ORDERS** the Secretary of CDCR, or his/her designee, to collect from Morris's trust account the $350 filing fee owed in this case by garnishing monthly payments in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). *ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION*;

(3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative forward an electronic copy to trusthelpdesk@cdcr.ca.gov;

(4) **GRANTS** Plaintiff <u>sixty (60) days' leave</u> from the date on which this Order is electronically docketed in which to either: (i) notify the Court of his intention to proceed with the Eighth Amendment claims against Blade only; or (ii) file an amended complaint that cures all the deficiencies of pleading noted above. Plaintiff's amended complaint must be clearly entitled "Amended Complaint," include Civil Case No. 21-CV-235 JLS (KSC) in its caption, and must be complete by itself without reference to his original Complaint. Defendants not named and any claims not re-alleged in the amended complaint will be considered waived. See S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend that are not re-alleged in an amended pleading may be "considered waived if not repled."); and

(5) **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form complaint under the Civil Rights Act, 42 U.S.C. § 1983, for his use in amending his Complaint, should he choose to do so.

**IT IS SO ORDERED.**

Dated: June 22, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge